# Thornburgh *v.* West Penn Railways Co., Appellant.

*Contracts—Agreement to abide by award—Arbitrators—Street railway company—Erection of line on private property—Damages.*

Where a street railway company constructed poles and lines over the center of a large tract of land belonging to the plaintiff and thereafter entered into a written agreement empowering arbitrators to decide the amount of compensation due the property owner for the construction of such line, and the use and occupation thereof, and such agreement provided that the award should be conclusive and that within thirty days thereafter a deed conveying the right of way over the premises should be delivered to the street railway company, which would at that time pay the amount of damages awarded, in an action thereafter brought by the property owner against the railway company where it appeared that the deed had been duly tendered and that defendant had failed to pay the amount of damages awarded, an affidavit of defense was insufficient which averred, (1) that the deed was insufficient, but failed to specify in what particulars; (2) that the arbitrators considered in estimating the amount of the damages the item of future damages to the land of the plaintiff resulting from the maintenance and operation of such line, where it appeared that the line was through the center

of plaintiff's land and it would be necessary to cross thereover for the purpose of making repairs; (3) that the arbitrators erred in assuming that the defendant would have the right to enter upon and cross the land at any point that might be desired for the purpose of maintaining and operating the line.

Argued May 8, 1916. Appeal, No. 408, Jan. T., 1915, by defendant, from judgment of C. P. Fayette Co., Sept. T., 1915, No. 30, for want of sufficient affidavit of defense in case of Eliza W. Thornburgh, Mary O. Casement, Robert M. Thornburgh, Eliza W. Lindsey, Catherine W. Hazard, Mary W. Harrison, Samuel E. Ewing, John K. Ewing, Jr., Belle E. Howell, William K. Ewing, Jared M. B. Reis v. West Penn Railways Company. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit upon an award of arbitrators.

The facts appear in the following opinion of VAN SWEARINGEN, P. J.:

In 1902 and 1903 the West Penn Railways Company, or its predecessors in interest, constructed a line of poles and wires for the transmission of electricity across a tract of land, containing over a thousand acres, owned by the eleven plaintiffs in this case, situate in North Union Township, known as the Evans farm, the line extending across said land for a distance of a mile and a half. The line thereafter was maintained and operated for the transmission of electricity, but no compensation ever was made to the plaintiffs for the privilege so taken on said land. On October 15, 1914, the plaintiffs and defendant entered into a written arbitration agreement, reciting the facts, and stating as the basis of the agreement that "no compensation has ever been made to the parties in interest in said land for the construction of said line and the occupation of said premises," and that it was the desire of the parties "to arrive at the compensation to be paid by an award to be made by a board of three arbitrators," to be chosen as therein specified, who "shall in-

vestigate the construction of said line and the route over which the same is located and shall either as a board or as a majority decide the amount of compensation due to the parties of the second part from the party of the first part as a consideration for the construction of said line and the use and occupation of the same," the arbitrators to "have the right to hold meetings and be permitted to hear testimony of witnesses submitted by either or both sides, and, in their discretion, may view the premises, and do all matters and things necessary to arrive at a fair compensation to be paid to said parties of the second part." It was set forth in the agreement that "the parties hereto, for the same consideration, hereby agree that the said party of the first part shall, within thirty days after such award, or within such time thereafter as said second parties hereto shall tender a good and sufficient deed to said first party conveying said right of way over said premises, pay to the said parties of the second part, as their interest may appear therein, the amount so awarded by said arbitrators, and the said parties of the second part shall receive said amount in full satisfaction of all claims or damages of every kind or nature whatsoever, and shall execute, contemporaneously with the said payment, to the said party of the first part, a right of way deed, conveying to the said party of the first part the said right of way for the construction, maintenance and operation of such transmission line." It was set forth further in the agreement that "the said award of the said arbitrators shall be final and conclusive and binding on the parties hereto, and that there shall be no appeal from such award, and that an award of such arbitrators and the tender of the amount thereof shall entitle the said first party to retain possession of said right of way for the maintenance, operation and repair of such transmission line."

In pursuance of the agreement of the parties arbitrators were chosen, who, on the fourth and fifth days of March, 1915, met and heard the testimony of witnesses

on behalf of the parties, and the arguments of counsel, and after consideration, on March 13, 1915, two of said arbitrators rendered an award in favor of the plaintiffs for the sum of $5,160.00. Thereafter, in pursuance of the arbitration agreement, on April 27, 1915, demand was made by the plaintiffs for payment of the amount of said award and the plaintiffs tendered to the defendant company a properly executed deed, releasing said company "from any claim or demand for the past occupation of said property," and granting and conveying to the company, its successors and assigns "the right, privilege and authority to permanently maintain and repair, operate and use, the said transmission line, as now located, upon, over, and across, said Evans property," as shown on blue print attached to and made part of said deed. The defendant company refused to pay to the plaintiffs the amount of said award and declined to accept said deed, and, on June 14, 1915, the plaintiffs brought the present action to recover the amount of the award of the arbitrators, with interest thereon from April 27, 1915, the date of the tender of the deed and of the demand for the payment of the award. An affidavit of defense was filed, which the plaintiffs contend is insufficient to prevent judgment, and the case is before us now on a rule for judgment for want of a sufficient affidavit of defense.

That the proceedings have been as above outlined is admitted, but in its affidavit the defendant alleges as matters of defense (1) that the deed tendered by the plaintiffs was not a good and sufficient deed for the purpose of conveying a right of way over said premises for said transmission line, including the rights and privileges provided for in the arbitration agreement; (2) that the arbitrators, under protest of counsel for the defendant, heard testimony, and considered, in estimating the amount of damages, the item of future damages to the land of the plaintiffs, resulting from the maintenance and operation of said transmission line; and (3) that the arbitrators, in arriving at the amount of their award,

under protest by defendant's counsel, took into consideration and assumed, after hearing the testimony of witnesses in regard thereto, that the defendant is to have the right to enter upon and cross said land of the plaintiffs at any point that may be desired for the purpose of maintaining and operating said line.

The defendant's contention in the last two respects is that the arbitrators went beyond the scope and authority of the arbitration agreement, thereby rendering their award of no validity. We cannot agree to the correctness of that contention. There is a blue print map of the land attached to and made a part of the arbitration agreement, and the facts shown on the face of that map may be taken into consideration in determining what matters were submitted for the decision of the arbitrators by the arbitration agreement. The map shows that the tract of land contains 1,018 acres. It indicates the boundaries and shape on the land, showing that the line extends through the middle of the tract, the long way, and for nearly the greatest distance possible. It shows that the land is crossed by railroads, township roads, and streams of water. The topography and character of the land are shown to some extent. The map shows that, owing to the shape of the tract at one end, the transmission line in following its course leaves the land at one point and comes back onto it again at another point. From the face of the map it is obvious that in repairing and maintaining the transmission line, access to it will be necessary from different points. The arbitration agreement specifically sets forth as "no compensation has ever been made to the parties in interest in said land for the construction of said line and the occupation of the premises," the arbitrators "shall investigate the construction of said line and the route over which the same is located," with the right "to hear testimony of witnesses submitted by either or both sides, and, in their discretion, may view the premises and all matters and things necessary to arrive at a fair compensation to be paid to the

said parties of the second part for the construction of said line and the use and occupation of the same;" that the said parties of the second part "shall receive said amount in full satisfaction of all claims or damages of every kind or nature whatsoever"; that the said parties of the second part, upon receipt of said sum, shall execute to the said party of the first part, "a right-of-way deed conveying to the said party of the first part the said right of way for the construction, maintenance and operation of such transmission line"; and that the tender of the amount of said award by the party of the first part to the parties of the second part "shall entitle the said first party to retain possession of said right of way for the maintenance, operation and repair of such transmission line." In pursuance of the arbitration agreement and tending to show how the agreement was construed by the parties, the plaintiffs tendered to the defendant company, following the award of the arbitrators, a deed releasing the company "from any claim or demand for the past occupation of said property," and granting and conveying to it "the right, privilege and authority to permanently maintain and repair, operate and use, the said transmission line," as then located on the land. All of which shows conclusively, in our opinion, that all past and future damages, or compensation, for said right of way, such as would be taken into consideration in an eminent domain proceeding, including what the defendant terms "future damages" resulting from the maintenance and operation of the line, and compensation for the right of entry as above indicated for maintenance and repairs, were contemplated by the parties in the arbitration agreement, and were included properly in the award of the arbitrators. Therefore all the testimony alleged to have been heard by the arbitrators, and considered by them in making up their award, and all the damage alleged to have been included by them in their award, was proper, being within the scope of the submission, and the

award of the arbitrators is valid and binding upon the parties.

In so far as the defendant's objections to the deed tendered by the plaintiffs are concerned, the affidavit of defense simply denies that the deed was "good and sufficient" for the purposes intended. There is no specifications of the particulars in which it is alleged the deed was not good and sufficient, and no information is given to the plaintiffs, or to the court, as to the respects in which it is alleged the deed was not in the form in which it should have been. For that reason the affidavit of defense in so far as it relates to defects in the deed, in our opinion, is insufficient to prevent judgment. Neither the plaintiffs nor the court have any means of knowing from the affidavit of defense what the defendant's objections to the deed are, and, consequently, whether or not those objections contain any merit. "Since the Act of May 25, 1887, P. L. 271, the completeness and accuracy required in the plaintiff's statement and the defendant's affidavit are substantially the same." Close v. Hancock, 3 Pa. Superior Ct. 207. If the allegations in this affidavit of defense relative to the alleged defects of this deed were contained in a statement of claim by some plaintiff as the basis of a cause of action, without more particularity, certainly no lawyer would contend that they would be sufficient upon which to sustain the action. "The evident purpose of the Act of May 25, 1887, is to secure full, concise statements of the material defects relied upon, so that each party may know with reasonable certainty the nature and character of the other's claim and contention relative to the subject-matter of the controversy." Hutton v. McLaughlin, 1 Pa. Superior Ct. 642. It is too well understood to require the citation of authorities that an affidavit of defense is insufficient to prevent judgment which merely denies indebtedness on a prima facie case presented; that an affidavit is insufficient which merely avers defects in the quality of goods sold and delivered or of materials furnished or work done; that general

allegations of fraud are not sufficient to take a case to the jury; that a mere averment of payment in an action of assumpsit is not sufficient; that a broad allegation of want of consideration in an action on a contract does not meet the requirements necessary to constitute a sufficient affidavit of defense. In all cases the particular facts going to constitute the defense must be shown. "An affidavit of defense should state specifically and at length the nature and character of the defense relied on." Bryar v. Harrison, 37 Pa. 233. "An affidavit of defense, to be effective, must disclose a state of facts sufficient to exhibit the elements of a substantial defense." Noble v. Kreuzskamp, 111 Pa. 68. General averments are not sufficient, particular specifications must be assigned. The allegation of the defendant in the present case that the deed tendered by the plaintiffs was not good and sufficient is merely the defendant's legal conclusion, and not a specification of particulars from which a legal conclusion may be drawn by the court.

We realize that the affidavit of defense before us relative to the alleged insufficiency of the deed presents a little different case from that ordinarily presented. Here, although a copy of the deed tendered by the plaintiffs is not included in the affidavit of defense, a copy of it is attached to and made part of the statement of claim, and is before the court for inspection. But the court, in our opinion, is not required to test out in its own mind every provision of the deed, and determine whether or not all of the provisions are sufficient to meet the requirements of the case, when the defendant has failed to specify insufficiency in any particular in its affidavit of defense. Nor can the defects of the affidavit in this respect be cured by statements of counsel at bar. It has been held in the appellate courts that where an affidavit of defense is insufficient on its face, its deficiency cannot be supplied by the history of the case or the arguments of counsel. Johnson, Warner & Co. v. Mann, et al., 9 Pa. Superior Ct. 251. The court will look to the pleadings

only. Consequently the deficiencies in this affidavit of defense in the respect now under consideration cannot be supplied by statements of counsel in their arguments in this court. If counsel could be heard to suggest one specific objection in this court they could be heard to suggest a dozen, and as many other and different ones in a court of appeal on review, without notice to the plaintiffs in the affidavit of defense of any, and without any fixed contention in the pleadings for any court to act upon. To hold that this affidavit of defense is sufficient would be to destroy all the benefits of the affidavit of claim and defense law, the purpose of which is to narrow the issue so that the parties may know in advance of the trial just what questions are in controversy between them.

The lower court made absolute plaintiff's rule for judgment for want of a sufficient affidavit of defense. Defendant appealed.

*Error assigned,* among others, was in making absolute plaintiff's rule.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* with him *L. B. Brownfield* and *Elias Goodstein,* for appellant.

*Joseph Neff Ewing,* with him *S. E. Ewing* and *A. F. Cooper,* for appellee.

PER CURIAM, May 23, 1916:

The insufficiency of defendant's affidavit of defense is convincingly pointed out in the opinion of the learned court below making absolute plaintiffs' rule for judgment. To that opinion nothing can be added, and, on it, the judgment is affirmed.